**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| JOYCE LOUISE CRAIN | * |
| | * |
| Plaintiff | * |
| | * |
| VS. | * |
| | *       NO:   4:10CV00730  SWW |
| MICHAEL J. ASTRUE,  Commissioner, | * |
| Social Security Administration | * |
| | * |
| | * |
| Defendant | * |

## ORDER

Plaintiff Joyce Louise Crain ("Crain") appeals the final decision of the Commissioner of the Social Security Administration denying her claim for disability income benefits.  The parties have submitted briefs, and the case is ready for decision.  After careful consideration, and for the reasons that follow, the decision of the Administrative Law Judge ("ALJ")[1] is affirmed, and Crain's motion for remand is denied.

## I.      Procedural History

In an application for disability benefits filed on July 27, 2006, Crain reported that she became unable to work on April 5, 2006 due to depression, which causes her to "stay tired and weak."  (Tr. 78)   The Social Security Administration denied Crain's claim initially and upon reconsideration, and she received an administrative hearing before an ALJ on March 20, 2008. Crain, represented by counsel, appeared and testified at the hearing.  In a decision dated July 23,

---

[1]The Honorable Edward M. Starr, Administrative Law Judge.

2008, the ALJ concluded that Crain was not disabled.  Crain requested that the Appeals Council review the ALJ's decision, and her request was denied.

## II.    <u>ALJ's Decision</u>

At the time of the hearing, Crain was sixty years old, with a highschool education.  Crain testified that her past work was operating a chicken house with her husband on the couple's land, and she ceased such work in April 2006 because of depression.  Crain reported that she has suffered from depression since 1990, her condition has become progressively worse, and she experiences anxiety attacks accompanied by elevated blood pressure.  According to Crain, she can no longer perform her past work because she forgets important things, such as turning on lights and fans in the chicken house.

In making his decision, the ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy.  *See* 20 C.F.R. § 416.920(a)-(g).

At step one, the ALJ found that Crain had not engaged in substantial gainful activity since April 5, 2006, her alleged onset date.  At step two, the ALJ found that Crain has a severe impairment, depression, that causes more than minimal limitations on her ability to perform basic work activities.  The ALJ found that Crain is also overweight and has high blood pressure,

but he determined that these conditions do not limit her ability to work.

At step three, the ALJ found that Crain does not have an impairment or combination of impairments that meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ specifically considered the requirements for Listing 12.04, which covers affective disorders, including depressive syndrome.

At step four, the ALJ found that Crain has the residual functioning capacity ("RFC") to perform work at all exertional levels, with moderate limitations in the abilities  to understand, remember, and carry out complex instructions and respond appropriately to usual work situations and routine work changes.  The ALJ determined that Crain is capable of performing her past relevant work as a poultry helper.  In comparing Crain's RFC with the physical and mental demands of her past work, the ALJ sent an interrogatory to a vocational expert, asking whether a person of Crain's age, education, and RFC would be able to perform her past relevant work.  The vocational expert answered the question in the affirmative.

## III.   Analysis

The Court's review is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996)**.**  In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. *See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004).

In this case, the ALJ's inquiry ended a step four, which requires an assessment of RFC and past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). If, as in this case, the ALJ determines that the claimant can still perform her past relevant work, the claimant is not disabled. *Id*. It is the claimant's burden to establish her RFC, defined as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). However, the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's description of her limitations. *See Masterson v. Barnhart*, 363 F.3d 731, 737-738 (8th Cir. 2004).

Crain argues that the ALJ's step-four determination is not supported by substantial evidence on the record as a whole because he (1) failed to give proper weight to her treating physician's findings, (2) failed to fully and fairly develop the record and explain inconsistencies, (3) improperly discredited her credibility, and (2) failed to buttress his findings with the opinions of treating and consultative sources.

### Medical Evidence

At least "some medical evidence" must support the ALJ's determination regarding a claimant's RFC. In this case, the ALJ considered records and treatment notes from Dr. Damon G. H. Martin, Dr. Linda O. Bell, Dr. Dan Ott, and state agency medical consultants. Dr. Martin serves as Crain's primary physician, and his treatment notes show that he prescribed Triavil for Crain's depression. (Tr. 155-158) Dr. Martin's records also indicate that Crain is overweight and has recurring problems with high blood pressure[2] and gastroesophageal reflux disease, for

---

[2]Crain testified: "My blood pressure has still been up a little, but just getting better. He said maybe I wouldn't have to stay on blood pressure medicine, but like I said, whenever I have these [anxiety] attacks–which I haven't been back to him yet, either. He may put me on them, I

which Dr. Martin prescribed Nexium.  Dr. Martin's treatment notes dated  May 18, 2006 show

that Crain reported that she was tired and did not feel like holding down a job, which prompted

Dr. Martin to recommend that Crain consult a psychiatrist.  (Tr. 155).

      The record is void of any evidence that Dr. Martin placed restrictions on Crain's work

activities or that he offered an opinion as to her capacity for work.  Crain contends that the ALJ's

determination regarding her RFC is inconsistent with Dr. Martin's prescribed treatment, but

evidence that Dr. Martin prescribed Triavil for depression and suggested that she consult a

psychiatrist is not inconsistent with a finding that she has the RFC to perform past relevant work.

      On July 18, 2006, Crain saw Dr. Linda O. Bell, a psychiatrist. (Tr. 159-161) Dr. Bell

recorded Crain's complaints that she lacked motivation and was constantly crying and staying in

bed.  (Tr. 159)  Dr. Bell also noted that Crain reported that she could not hold down a job outside

of her home and she had closed her chicken houses after operating them for 30 years. (Tr. 159)

Dr. Bell diagnosed Crain with major depressive disorder, single episode, in partial remission,

and she advised Crain that the antidepressant Triavil, prescribed by Dr. Martin, could be cause

lack of motivation, weight gain, and fatigue.  Dr. Bell recommended that Crain talk to Dr. Martin

about trying a new antidepressant, but Dr. Bell's records state that Crain was hesitant to try a

new drug because she was "scared of medication and certainly did not want to take Prozac."  (Tr.

161)    Dr. Bell reported no work-related limitations, and her records contain no opinion as to

Crain's ability to work.  Crain testified that Dr. Bell advised her to apply for disability (Tr. 34-

25), but as noted in the ALJ's decision, Dr. Bell's report contains no reference to such a

recommendation.  Crain asserts that the ALJ failed to adequately explain inconsistencies; she

—————————————————

don't know, I'm just guessing."  (Tr. 21)

states:  "Dr. Bell felt the plaintiff might improve with a change from Triavil but Dr. Martin did

not change his medical treatment."   Claimant's Brief at 11.   However, the evidence indicates

that Crain immediately rejected Dr. Bell's recommendation that she approach Dr. Martin about

switching to another antidepressant, and nothing in the record indicates that Dr. Martin

considered Dr. Bell's suggestion.

Dr. Dan Ott, Psy.D, a consultive psychologist, examined Crain for a disability

determination in  October 2006.  (Tr. 162-170) According to Dr. Ott's report, Crain told him that

she had suffered from depression since 1990, after she underwent a hysterectomy, and that she

recently stopped operating a chicken farm because she felt she could no longer handle the

responsibility.   Dr. Ott diagnosed Crain with a mood disorder secondary to hysterectomy with

depressive features, and he concluded that significant improvement was unlikely without

appropriate mental health services. (Tr. 166) Dr. Ott opined: "Psychotherapy should have been

recommended 16 years ago, but could still help to improve her mood and increase her stress

management skills."  (Tr. 166)

Dr. Ott noted that Crain's verbal skills were satisfactory; she reported no problems

getting along with other people, she had a driver's license and vehicle; and she lived with her

husband and did most of the cooking, laundry, and housework and managed household finances

with reminders from her husband.  (Tr. 167-168) Dr. Ott noted that he observed no physical

limitations or limitations with concentration, persistence, or pace (Tr. 168-169) and that Crain is

able to manage funds without assistance. (Tr. 169)  Dr. Ott's report contains no work-related

limitations or opinion as to Crain's ability to work.

Finally, state agency medical consultants reviewed Crain's medical records and provided

the following assessment of her mental RFC: "The claimant is able to perform work where interpersonal contact is incidental to work performed, e.g., assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; [and] supervision required is simple, direct and concrete." (Tr. 189)

Contrary to Crain's assertions, the Court finds no inconsistencies between the ALJ's finding that Crain has the RFC to perform her past work and medical evidence.  Further, the Court finds no basis for charges that the ALJ failed to develop the record and failed to buttress his findings with the opinions of treating and consultive sources.  State agency physicians performed mental RFC assessments and made conclusive findings initially and upon reconsideration (Tr. 189, 195-196), which are consistent with the ALJ's finding that Crain retains the RFC to perform work at all exertional levels, with moderate limitations in the abilities to understand, remember, and carry out complex instructions and respond appropriately to usual work situations and routine work changes.

### Crain's Allegations of Pain and Limitations

Crain argues that the ALJ improperly discredited her testimony.  "When analyzing a claimant's subjective complaints of pain and limitations, the ALJ must examine: (1) the claimant's daily activities, (2) the duration, frequency and intensity of the pain, (3) precipitating and aggravating factors, (4) the dosage, effectiveness and side effects of any medication, and (5) functional restrictions."  *Teague v. Astrue*  638 F.3d 611, 615 (8th Cir. 2011)(citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984)). The ALJ need not explicitly discuss each of the foregoing factors, and may properly discount the claimant's testimony where it is inconsistent with the record.  *Id*.

Here, the ALJ determined that Crain's pain and fatigue were not of such persistence and severity as to be disabling.   First, the ALJ considered Crain's daily activities, noting that although she  complains that she is tired, lacks motivation, and is easily distracted, she performs a broad range of household chores and her activities of daily living are not significantly limited. Second, the ALJ observed that Crain complains of fatigue much more than she complains of pain, which is limited to neck and shoulder discomfort.[3]  Third, the ALJ noted that Crain testified that her fatigue and depression were aggravated by stress.  Although not discussed in the ALJ's decision, Crain testified that watching "murder shows" caused her stress and anxiety, but she did not state that she experienced stress from working as a poultry helper. (Tr. 18)

Fourth, the ALJ discussed Crain's testimony that medication she takes for depression and anxiety helps her.  He also noted that Crain testified that she "probably" experiences side effects, but she did not identify specific adverse effects from her medication.[4]  Considering the record as a whole, the ALJ properly concluded that Crain's subjective complaints and claimed limitations were unsupported to the extent alleged.

---

[3]When asked whether she experienced head or muscle aches, Crain responded: "No–not really, I'll, I'll just get tired.  Yeah, my neck and shoulders bothers me a lot, you know . . . . " (Tr. 20)

[4]In a memorandum filed on April 6, 2011, Crain argues that the ALJ failed to consider whether her failure to follow Dr. Bell's recommendation that she consider trying another antidepressant was the result of a medically determinable symptom of her depression rather than noncompliance.  However, this is not a case in which the ALJ relied primarily on the claimant's noncompliance to discredit her alleged symptoms.  *See Watkins v. Astrue,*2011 WL 1166744, *1 (8th Cir. March 21, 2011)*(*"Because the ALJ relied primarily on Watkins's noncompliance with treatment recommendations to discredit his allegedly disabling psychiatric symptoms, the ALJ's related adverse credibility determination is not entitled to deference.").  Furthermore, the record is void of evidence that Crain lacks the rationality or mental well being to decide whether to follow through with medical advice.

Finally, Crain argues that the ALJ's determination that she could return to her past work as a poultry helper is inconsistent with state agency findings.  According to Crain, a vocational assessment included on the  agency's case development sheet states that she is limited to work at the light and unskilled level, and the job of poultry helper is rated as semi-skilled, with medium exertional requirements.

Crain's interpretation of the agency's vocational assessment is inaccurate.  The assessment specifically states that Crain has *no* physical restrictions, and the only limitations specifically noted are those included in the mental RFC assessment, quoted above.  The vocational assessment goes on to list jobs available in the national economy that "do not exceed" Crain's ability--poultry boner, poultry dresser, and poultry eviscerator–which are described as "unskilled jobs . . . performed at the light level of exertion [that] do not require excessive interpersonal contact."  (Tr. 191)

## IV.    Motion to Remand

Crain asks the Court to remand her claim to the Social Security Administrator under the "sixth sentence" of § 205(g) of the Social Security Act.  Sentence six remands may be ordered only where the (1) Commissioner requests a remand before answering the complaint or (2) where new, material evidence is adduced that was for good cause not presented before the agency. *See Buckner v. Apfel,* 213 F.3d 1006, 1010 (8th Cir. 2000)(citations omitted).

Crain seeks remand on the ground that new evidence has been adduced--specifically, a mental diagnostic evaluation performed on August 2, 2010 by psychologist Steve A. Shry (docket entry #12, Ex. A).  The Court may remand a case to have the Commissioner consider additional medical evidence, but "only upon a showing that there is new evidence which is

material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see also Hepp v. Astrue*, 511 F.3d 798, 808 (8th Cir. 2008).  To be material, new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied.  *See Hepp*, 511 F.3d at 808. Good cause does not exist when the claimant had the opportunity to obtain the evidence before the administrative record closed but failed to do so without providing a sufficient explanation. *Id.*

Crain's new evidence is an assessment of her condition in August 2010, more than two years after the relevant period ended.  Accordingly, the new evidence is not relevant to Crain's condition during the period for which benefits were denied.  Furthermore, Crain provides no explanation for failing to obtain the information before the record closed; thus she has failed to establish good cause for failure to incorporate the evidence in the record in prior proceedings. The motion for remand will be denied.

After careful review, the Court finds that the record contains ample evidence that a reasonable mind might accept as adequate to support the conclusion of the ALJ in this case.

IT IS THEREFORE ORDERED that the final determination of the Commissioner is AFFIRMED.

IT IS FURTHER ORDERED that the motion for remand (docket entry #12) is DENIED.

Consistent with the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 19th  DAY OF SEPTEMBER, 2011.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE